[No. 2084.    June 9, 1917.]

Ex parte DEATS.

### SYLLABUS BY THE COURT.

1. Chapter 47, Laws of 1917, impliedly repeals chapter 75, Laws of 1913, so far as that act applies to municipalities having a population of less than 1,000, and such municipalities are hereafter to be governed in matters of local option elections and rights arising therefrom by chapter 78 of the Laws of 1913, as amended.          P. 537

2. A license to retail intoxicating liquor is neither a property right nor a contract. It is in no sense a contract made

by the state with the party holding the license; it is a mere permit, subject to be modified or annulled at the pleasure of the Legislature.                                                     P. 543

3.  A petition in local option elections, to give jurisdiction, must contain all the averments required by statute; and where the petition for the election is not in compliance with the statute, all proceedings based thereon are void, and no jurisdiction to order an election is acquired, and the election in such case is a nullity.                                   P. 544

4.  Under chapter 78, Laws of 1913, the county commissioners have power to order a local option election, where the petition defines a district and is signed by the requisite number of electors; and an inclusion of territory in which a local option election has been held within four years, while erroneous does not invalidate the election, provided the elimination of such territory will not change the result.
                                                            P. 544
Robert, J., dissenting in part.

Application in Supreme Court by J. F. Deats for writ of habeas corpus.  Write denied.

O. O. Askren and K. W. Scott, both of Roswell, for relator.  Patton & Bratton, of Clovis, for respondent.

### OPINION OF THE COURT.

HANNA, C. J. [1]  The legislative session of 1913 enacted two laws regulating the barter, sale, and exchange of intoxicating liquors.  The first applies to municipalities, and is incorporated in the Session Laws as chapter 75 (sections 2940 to 2948, inclusive, of the Code of 1915). The second appears as chapter 78 of the Session Laws (sections 2927 to 2939, inclusive, Code 1915).  The last-mentioned act provides for the submission of the question to the qualified electors of any district within any county, excluding any territory within any incorporated city, town, or village.  The municipal act provided for a petition to be signed by 25 per cent. of the electors, and that the ques-

tion should be submitted but once every four years, and then only upon petition, as provided by the terms of said act. The district act, known as chapter 78, likewise provided for a petition to be signed by 25 per cent. of the qualified electors within the proposed district described in the petition. The act further provided that, upon the filing of said petition, the county commissioners should—

"enter upon their minutes an order designating such district in accordance with the description thereof contained in such petition, except in case two or more such petitions are filed wherein the area described is conflicting, in which event the commissioners shall determine the district or districts in which the question shall be submitted."

Section 1 of the latter act, appearing as section 2927 of the Code of 1915, further provided that:

"The county commissioners of any county of the state shall submit to the qualified electors of any district within their county, to be designated by them as hereinafter provided, the question of whether or not the barter, sale or exchange of intoxicating liquors shall be prohibited therein * * *"

—leaving no discretion in the county commissioners when a petition conforming to the statute had been filed with them.

Section 9 of this act likewise provided that:

"Such question affecting any territory included in any such petition shall not again be submitted for your years from the date of the election, and then, only upon petition filed as herein provided."

The section 1 referred to, in what may be called the district act, appearing as chapter 78 of the Session Laws, was amended by chapter 47 of the Laws of 1917. After re-enacting section 1, the amendatory act further provides:

"Except as in this article otherwise provided, any such district so designated by the county commissioners shall include such part of the area of any county as may be described in the petition provided for and filed in accordance with this article: Provided, that it shall not include any territory with-

in any incorporated city, town, or village of more than 1,000 population, whether incorporated under general or special laws."

Under the statutes referred to, we are called upon to determine whether or not the petitioner, J. F. Deats, who has applied for a writ of habeas corpus, should be discharged from custody in a proceeding instituted before the justice of the peace of precinct No. 1 of Curry county, wherein he was charged with violation of section 2934, Code of 1915, which is a part of chapter 78 of the Laws of 1913. It appears that under this act a petition was circulated in Curry county, to which was attached the signatures of the requisite number of electors, pursuant to which an election was ordered and held for the entire county of Curry, excepting the city of Clovis, on the 21st day of May, 1917, and after the election had resulted in favor of prohibition, and the result had been canvassed and declared, it is urged that the penal provisions of said chapter 78 became operative within said county, and that therefore the said J. F. Deats is lawfully detained in custody for a violation of the provisions of said act.

It is urged by petitioner, however, that the provisions of chapter 78 of the Laws of 1913 are not in effect in the incorporated town of Texico, or in the town of Melrose, both of which towns were included within the limits of the boundaries described in the petition as constituting the district wherein a local option election was desired by the petitioners, because in both Texico and Melrose the question had been previously submitted within a period of four years, for which reason the petition was illegal and void, and the county commissioners were without jurisdiction to call the election of May 21, 1917. It is further contended on behalf of petitioner that the amendatory act, chapter 47 of the Laws of 1917, did not authorize the county commissioners to act upon a petition which contained a description of the district including the territory of the incorporated town of Texico and to order an election therein, and that the amendatory act is prospective only, and that the Legislature never intended it to operate upon terri-

tory in which the question had been previously submitted within a period of four years.

On behalf of the respondent it is contended that the amendatory act of 1917 repealed the municipal local option law in so far as the same applied to municipalities of less than 1,000 population, and that such amendatory act to that extent was in conflict and inconsistent with the terms of the municipal local option law. Without desiring to lengthen this opinion by a discussion of all the reasons, we think it is clear that chapter 75 of the Laws of 1913 was intended to apply only to incorporated cities, towns, and villages, while chapter 78 of the same Session Laws was to have application only to such districts as might be created by petition within counties, excluding any territory within incorporated cities, towns, or villages. In 1917 the Legislature clearly intended to take out from under the operation of chapter 75 incorporated cities, towns, or villages of less than 1,000 population; such municipalities to be thereafter governed by the district law, or chapter 78 of the Laws of 1913, as amended by the 1917 act.

We do not agree that the two methods for the submission of the local option question were intended to be continued in effect as applied to municipalities of less than 1,000 population. The first act, that of chapter 75, provides a procedure materially different from that of chapter 78, as amended, and the conflict between the two methods of procedure is sufficiently clear to call for an implied repeal of chapter 75, so far as it applies to municipalities having a population of less than 1,000. It is conceded that the town of Texico was a municipality having a population of less than 1,000 persons at the time of the election held there on June 9, 1914, and petitioner alleges that the amendatory act of 1917 cannot apply to Texico until four years after that election. Petitioner depends upon section 5 of the municipal act to support this theory, which, as indicated, supra, provided that "such question" (referring to the question of local option) shall be submitted but once every four years, and then only upon petition filed as herein provided.

It is clear that the class of municipalities in which Texico

was has been taken out from under the application of the municipal act, and we are therefore left to a consideration only of the question of whether or not the Legislature, in its wisdom, could make provisions for governing future elections in municipalities of this class without regard to the inhibition of the former act against the resubmission of the question within four years. It is clear that Texico is not to be longer governed by the provisions of chapter 75, but, on the contrary, must look to the district act as defining her rights, at least prospectively. If we were to hold that she had a right to claim her privilege of asking that four years should elapse before the question should again be submitted, it would seem that we would again be compelled to hold, after that period of time had elapsed, that the question could only again be submitted upon petition filed as provided for by the municipal act, when as a matter of fact she would then be amenable only to the district act, under the terms of which she would clearly fall, and we cannot see how she can be for one purpose included under one act and for another purpose be included under the provisions of the other act.

The Legislature in both acts of 1913 evidently determined as a matter of public policy that elections upon the subject should not be oft-repeated, and that the public should not be aroused by too early resubmission of a question upon which public sentiment is strongly divided, and this statement of legislative intent, or public policy, is but the fiat or declaration of the Legislature, which it can change at will. In other words, the people of Texico are amenable to public policy as declared by the Legislature in this respect, and while it is true that chapter 78 of the Laws of 1913, under which Texico is now to be governed, likewise provides that the question shall not be resubmitted within four years from the date of the election, and then only upon petition as provided for by the act, yet Texico, not having been governed by the provisions of the district act at the time of her former election, cannot measure her present rights by an act which had no application to her condition at the time of her election. If our conclusion in this respect is not correct, the Legislature could not ef-

fectuate state-wide prohibition, or any form of local option, by the enactment of new legislation and the repeal of all existing legislation. To state the proposition is to point to the absurd state of affairs which would arise, were we to agree with the contention.

The case of State v. Donovan, 61 Wash. 209, 112 Pac. 260, supports our conclusion in the matter of the question raised as to Texico. In that case a county of the state of Washington, in which was situated the town of McMurry, held an election resulting in the prohibition of the sale of liquor within the county. Afterwards the town of Mc-Murry was incorporated, and thereby fell under a general act of the licensing of saloons in incorporated towns, and it was held by the Washington court that the town might license the sale of liquor therein under the conditions of the general act, and that it was not necessary to first have a local option election in such town, although the time within which the period of prohibition should continue under the election had not expired. The court in its opinion considered the rule laid down in 23 Cyc. p. 95, in the following language:

"Where the local option law is in force in an entire district, and a portion of the district is cut off and joined to other territory under a new name, the law still remains operative through the part not thus served; and also, where a new district is carved out of the one where prohibition is in force, the same law will continue in force in the new district."

The court pointed out that the cases supporting the announced rule in Cyc. were cases where the question of changing boundaries alone was considered, but that in the Washington case another principle was involved, which had no reference to the change of boundaries, but did have reference to the establishment of another form of government within a territory which had previously been brought under the operation of the law. It was said in the opinion of the court that:

"It is not by reason of any change of territory that it is given this right, but by reason of the authority which the general law gives to incorporated towns."

While the facts of the Washington case and the case under consideration are not parallel, the reasoning is applicable to the present case by reason of the fact that Texico by the legislative declaration of 1917 was taken out from under the provisions of the so-called municipal act, and placed under the provisions of the so-called district act. She thereby becomes governed by all the terms and provisions of the general act, known as the district act, and it is not a question of change of boundaries, but purely a question of the law applicable, which in this case is the district law, and to which she must look entirely for a definition of her rights and responsibilities.

We conclude, therefore, that chapter 47, Laws of 1917, impliedly repeals chapter 75, Laws of 1913, so far as that act applies to municipalities having a population of less than 1,000, and that such municipalities are hereafter to be governed in matters of local option elections and rights arising therefrom by chapter 78 of the Laws of 1913, as amended.

[2] A further question, however, is presented by the petition, in the point made that the Legislature was powerless to pass a law affecting the rights of the petitioner acquired by him by reason of the fact that Texico had previously voted to remain wet, because the law prohibits a resubmission of the question within four years. It is contended that the petitioner claims his vested rights, which the legislation would deprive him of; in other words, that the petitioner gained the right to obtain a local license to engage in that business for the period of four years. This court has recently held against this contention in the case of Schwartz et al. v. Town of Gallup et al., 22 N. M. 521, 165 Pac. 345, a case not officially reported; and a like holding was had in the case of Ex parte Everman, 18 N. M. 605, 139 Pac. 156. In the case last cited the court held:

"A license to retail intoxicating liquor is neither a property right nor a contract. It is in no sense a contract made by the state with a party holding the license; it is a mere permit, subject to be modified, or annulled, at the pleasure of the Legislature."

This holding is decisive of the question under consideration and there can be no vested right as contended for.

[**3, 4**] A serious question is presented by the fact that the Melrose district was included in the petition. Melrose was not an incorporated town and fell under the provisions of chapter 78. The election there was held on August 30, 1913, so that by the inclusion of this district in the petition for the election held on May 21, 1917, a district was included wherein the question had been submitted within four years under the same law. It is clear to us that this district was erroneously included in the district described in the petition for the last election of 1917, and the effect of the inclusion of this district in the petition referred to is the serious question presented for our consideration. It is contended that, because the petition filed with the board of county commissioners included this district of Melrose, the petition was invalid, and the order of the board of county commissioners ordering the election was equally invalid and of no effect. We believe it is to be conceded, in local option elections, that:

"A petition, to give jurisdiction, must contain all the averments required by statute, and where the petition for the election is not in compliance with the statute, all proceedings based thereon are void, and no jurisdiction to order an election is acquired, and the election in such case is a nullity." Joyce on Intoxicating Liquors, § 381.

We hold, however, that the statute in this case does no more than require the accurate setting out of the boundary of the proposed district, together with the requisite 25 per centum of the electors as signors, and while it is true that the same law provides that the question shall not be resubmitted for four years from the date of the election, yet it is also true that this act leaves no discretion whatsoever in the board of county commissioners in the matter of defining the boundaries of the district, except in case of conflict, and while the inclusion of the Melrose district was erroneous, because of the fact that an election had been previously held in that district, that is a matter which, upon being brought to the attention of the court, can be cor-

rected by the elimination of the district, wrongfully included, provided such elimination does not affect the result, as is conceded to be the case here.

We are not unaware of the fact that it is contended that this inhibition against the resubmission of the question is in some jurisdictions held to mean resubmission in the same territory; but we do not deem it necessary to consider the matter from this standpoint, in view of our conclusion that the petition on its face set out facts which conferred jurisdiction upon the board of county commissioners to order an election. If the development of subsequent facts demonstrated an erroneous inclusion of such territory, it is like any other question of erroneous exercise of jurisdiction—one that may be corrected in the proper forum of the courts, which this court can do by holding, as it does, that the election had no force or effect in the Melrose district. where it was shown that an election had previously been held within a period of four years.

Our attention has not been directed to a case in point, nor have we been able to find one; but on principle it would seem that the question of jurisdiction depends upon whether there was simply a wrongful exercise of jurisdiction, rendering the proceeding voidable, or a lack of power to hear the matter at all, rendering the action absolutely void. This distinction is pointed out in 17 Am. & Eng. Enc. 1048. There was power to order the election, where the petition defined a district and the requisite number of electors signed, and an erroneous inclusion of a part of the territory affected, while erroneous, does not constitute an exercise of jurisdiction that is absolutely void, but one that is merely voidable as to the territory affected, and is therefore not subject to collateral attack.

Summarizing, our conclusion as to the Melrose matter is that under chapter 78, Laws of 1913, the county commissioners have power to order a local option election, where the petition defines a district and is signed by the requisite number of electors, and an inclusion of territory in which a local option election has been held within four years, while erroneous, does not invalidate the election, provided the elimination of such territory will not change the

result. We do not need to discuss, in our opinion, the further question, raised and ably argued, as to the element of harmless error, growing out of the fact that Melrose voted in favor of prohibition at its first election and at the subsequent election held this year as well, thereby not changing the status of its condition in that respect, and not working any harm thereby to relator.·

We conclude that the writ prayed for should be denied, and· that the relator should be remanded to the custody of the respondent; and it is so ordered.

### SPECIAL CONCURRING OPINION.

PARKER, J. (concurring specially.)     I concur in the result reached by the Chief Justice. The right to sell whisky is not a property right, nor a contractual right. The occupation of liquor selling is a sort of outlaw in the business world, permitted and tolerated by the Legislature, only so long as it may see fit, and upon such terms and conditions and under such restrictions as may be prescribed. Therefore the Legislature has the power at any time, if it so elects, to revoke the permission and to cancel all permits granted. This power necessarily extends to the rights to sell liquor acquired under local option laws, the same as where the right arises under the laws put into operation directly by the Legislature. The inhabitants of the town of Texico acquired no right to have liquor sold therein for four years following the local option election, which was not subject to the control of the Legislature, nor did they secure immunity for four years from another vexatious local option election, if the Legislature elected to provide for the same. The question, then, is not whether the Legislature had power, which is undisputable, as is argued for petitioner, but whether the Legislature has exercised its power to provide that the inhabitants of Texico may be again called upon to vote on the liquor selling question.

As is pointed' out by the Chief Justice, the local option laws of the state originated in 1913, and two chapters, chapters 78 and 75, were then passed. The former appears as sections 2927-2939, Code 1915, being the district local

option statute, and the latter as sections 2940-2948, being the municipal local option statute. These two acts divided the territory embraced in counties into two classes: That embraced in municipalities; and that not so embraced. The petition for the election in the first class was to the municipal authorities, and in the second class to the county commissioners, who respectively ordered the election. By chapter 47, Laws of 1917, municipalities were divided into two classes: Those of more than 1,000 inhabitants; and those of 1,000 inhabitants or less. The latter classes were included within the express terms of the district local option statute; chapter 47, Laws of 1917, being an amendment of section 2927, Code 1915, which is the first section of the district law. After the passage of the act of 1917, we have two classes of territory in which the local option statute may be invoked: In municipalities of over 1,000 inhabitants; and any other part or parts of the counties. The act of 1917 in terms amended section 2927 "so as to read as follows." It repealed section 2940 and 2944, parts of the municipal local option act, by necessary implication, in so far as municipalities of 1,000 inhabitants or less are concerned. The implication of repeal is necessary, because otherwise two inconsistent systems of elections in the municipalities of 1,000 inhabitants or less would result: One by petition to the municipal authorities; and one by petition to the county commissioners. There is no reason for maintaining two systems, and the legislative intent is clear to establish one system for all parts of the counties, except municipalities of over 1,000 inhabitants.

The municipal act being repealed as to cities and towns of 1,000 inhabitants or less, the rights and status acquired by any previous elections in them necessarily failed; there being no property or contractual right involved, and there being no saving clause in the act whereby such right or status is preserved. The city or town of 1,000 inhabitants or less is in the same position as if no election had ever been held therein, in so far as the applicability of the district law as amended is concerned. For specific application of this doctrine in a local option case, see Com. v. Burk's Springs Distilling Co., 137 Ky. 224, 125 S. W. 306.

It follows that Texico cannot claim any exemption from the operation of the act of 1917.

Much stress is laid upon the fact that the Melrose district which previously, and within the four-year period fixed by statute for elections on this subject, had voted "dry," was included in the petition to the county commissioners, in the election proclamation, and in the election. An examination of the petition for the election and the election returns discloses, however, and it is conceded, that the Melrose district might be excluded, both from the petition and the vote, and the result remain just the same. Much argument is devoted in the briefs to show that the inclusion of the Melrose district rendered the whole election void. The argument proceeds upon the theory that the county commissioners had jurisdiction to order elections only in districts where the question had not been voted upon within the four years. They ordered the election in the whole county, outside of Clovis, a city of more than 1,000 inhabitants, and consequently included the Melrose district, over which they had no jurisdiction. Therefore the whole election is void. This argument is clearly too narrow and faulty. The object of the local option law is to enable the people of a given district to express their will at the polls as to whether liquor shall be sold therein. This they have done in this case, and have put the stamp of their disapproval upon the same. The subject-matter was within the jurisdiction of the county commissioners, but the procedure was faulty, in that the Melrose district was erroneously included. If that fact had any effect upon the result, the whole election might be well held void. But here no harm has resulted to any one. The people of the county, who were entitled to do so, have expressed their will that liquor shall not be sold therein, and their desires ought not to be thwarted by reason of the fact merely that other citizens of the county, who were not entitled at the time to speak upon the subject, were permitted to do so; the total result being unchanged. Under such circumstances, the liquor dealers of Texico cannot be heard to complain of the procedure whereby the people were permitted to register their will. If the people of the Melrose district in a proper pro-

ceeding were to complain of their illegal subjection to the annoyance of the liquor election, their claim to relief would be compelling on the court. The object of prohibition of elections oftener than once in four years is the protection of the districts which have voted on the subject, not for the benefit of other parts of the county. I am of the opinion, therefore, that the inclusion of the Melrose district in the election, while unauthorized, was harmless under the facts in this case, and the inhabitants of the other parts of the country have no such interest as to entitle them to complain thereof.

I therefore concur that the writ should be discharged.

### CONCURRING AND DISSENTING OPINION.

ROBERTS, J. (concurring in part, but dissenting in part). The Legislature of New Mexico in 1913 enacted two laws relative to local option elections, for the purpose of determining whether or not intoxicating liquors should be sold. The first act was passed on March 15, 1913, and appears as chapter 75, Laws of 1913, and as sections 2940 to 2948, inclusive, Code 1915. This act provided for the submission of the question as to whether or not the barter, sale, or exchange of intoxicating liquors should be prohibited in municipalities. Under this act, upon the filing of a petition by electors equal in number to 25 per centum of the votes cast for the candidate receiving the highest number of votes at the last preceding municipal election with the city clerk, and presented to the city or town council, it became the duty of the council to provide for the submission of such question to a vote of the people of such city or town; and if a majority of those voting at the election voted in favor of prohibiting such traffic, then it was made unlawful for any person to barter, sell, or exchange intoxicating liquors within the limits of such city, or within two miles of the limits thereof. Section 5 of such act (section 2944, Code 1915) provided:

"Such question shall be submitted but once every four years, and then only upon petition filed as herein provided."

On the same day chapter 78, Laws of 1913, became a

Ex Parte Deats, 22 N. M. 536.

law.   This act appears as sections 2927 to 2939, inclusive, Code 1915.   The first section of the act reads as follows:

"The county commissioners of any county of the state shall submit to the qualified electors of any district within their county, to be designated by them as hereinafter provided, the question of whether or not the barter, sale or exchange of intoxicating liquors shall be prohibited therein as provided by this act.

"Except as herein otherwise provided, any such district so designated by the county commissioners shall include such part of the area of any county as may be described in the petition provided for and filed in accordance with this act: Provided, that it shall not include any territory within any incorporated city, town or village, whether incorporated under general or special laws."

The second section of the act provided, in substance, that the petition for the submission of such question within such a district described in the petition might be presented to the county commissioners of any county, if signed by 25 per centum of the qualified electors resident within the proposed district, that the petition should describe accurately the boundaries of the proposed district, and further, upon the filing of such petition, it was made the duty of the county commissioners to enter upon their minutes an order designating such district in accordance with the description thereof contained in such petition, except where two or more such petitions were filed wherein the area described was conflicting, in which event the commissioners were given power to determine the district or districts in which such question should be submitted.   Provision was made for the appointment of officials to conduct the election and for notice of the time, place, etc.   Section 9 (section 2935, Code 1915) reads as follows:

"Such question, affecting any territory included in any such petition, shall not again be submitted for four years from the date of the election, and then only upon petition filed as, herein provided."

In 1917 the Legislature enacted chapter 47, Laws of 1917, amending section 2927, Code 1915, which was the first section of chapter 78, Laws of 1913.   The amended section changed the proviso to section 2927 to read as follows:

"Provided, that it shall not include any territory within any incorporated city, town or village of more than one thousand population, whether incorporated under general or special laws."

On the 9th day of June, 1914, the board of trustees of the town of Texico, Curry county, pursuant to the provisions of chapter 75, Laws of 1913 (sections 2940 to 2948, inclusive, Code 1915) duly submitted to the qualified electors of the town of Texico, an incorporated town, the question of whether or not the barter, sale, or exchange of intoxicating liquors within such town should be prohibited, and at such election a majority of those voting thereon voted against prohibition and in favor of continuing the licensing and sale of intoxicating liquors. In July, 1913, a petition in compliance with chapter 78, Laws of 1913 (sections 2927 to 2939, inclusive, Code 1915), was presented to the board of county commissioners of Curry county, asking for an election within a certain described district, known as the Melrose district, upon the question as to whether or not the barter, sale, or exchange of intoxicating liquors within such district should be prohibited. The election was held August 30, 1913, and resulted in favor of prohibition. Included within this district was the unicorporated town of Melrose. The territory embraced within the district was approximately four miles square. On the 4th day of April, 1917, more than 25 per centum of the qualified electors within that part of Curry county, except those residing within the boundaries of the city of Clovis, that being a municipality of more than 1,000 population, presented to the board of county commissioners of Curry county a petition requesting them to call an election and to submit to the qualified voters within a district determined and designated in such petition as composed of all the voting and election precints of Curry county, and all the area of Curry county, including Texico, an incorporated town of less than 1,000 population, and Melrose and contiguous territory, which was then under district prohibition, the question of whether the barter, sale, or exchange of intoxicating liquors should be prohibited therein. The board of county commissioners of said county

proceeded to call and hold an election within such designated district, which election was held on the 21st day of May, 1917, and resulted in a majority of the electors voting in favor of prohibiting the barter, sale or exchange of intoxicating liquor within such designated district.

At and prior to the date of such election J. F. Deats, in whose behalf this application for writ of habeas corpus was made, was engaged in the sale of intoxicating liquor in the town of Texico under licenses regularly issued to him by the board of county commissioners of such county and the town board of such incorporated town. After the county commissioners had canvassed the vote and declared the result of such prohibition election, Deats continued to sell intoxicating liquors in the town of Texico, whereupon he was arrested, tried, and fined for selling intoxicating liquor contrary to the provisions of said chapter 78, Laws 1913, as amended. The petition alleged that Deats was held in custody by the sheriff of Curry county under and by virtue of such conviction and fine as aforesaid.

It is contended that his restraint is unlawful upon either of two grounds: First, that Texico having held a local option election less than four years preceding, the election last referred to resulting in a majority of the votes being cast in favor of continuing to license the sale of intoxicating liquor, such town was improperly included in the petition and order for the district election held on the 21st day of May, 1917; second, that the Melrose district having voted dry less than four years preceding the 21st day of May, 1917, such district was improperly included in the petition which resulted in the election of May 21st, 1917, and, being so improperly included, the county commissioners were without power or authority to order the election last referred to.

On behalf of the petitioner it is contended that the amendment (chapter 47, Laws 1917) did not authorize the county commissioners to act upon a petition which contained a description of a district including the territory of the incorporated town of Texico and to order an election thereon; that the amendatory act is prospective, and not retrospective or retroactive, and that the Legislature never

intended it to operate upon the territory which had already submitted the question under chapter 75, Laws 1913; and that that law is in full force and effect, and its provisions in force and in operation, in the town of Texico. On behalf of the respondent it is contended that the amendatory act of 1917 repealed the municipal local option law in so far as the same dealt with municipalities of less than 1,000 population, and that such amendatory act to that extent was inconsistent with the terms of the municipal local option law.

I agree with the contention of the respondent. It is well settled that an existing statute may be repealed by implication by a later subsequent statute upon the same subject, where the later act is inconsistent with, repugnant to and irreconcilable with the former. 36 Cyc. 1073; State ex rel. v. Romero, County Treasurer, 19 N. M. 1, 140 Pac. 1069. In Sutherland on Statutory Construction, vol. 1 (2d Ed.) § 246, it is said:

"But a statute may have the effect to repeal a former statute, or some provision of it, though it be silent on the subject of the repeal. In such cases repeal is inferred from necessity, if there be such conflict that the old and new statutes cannot stand together."

The same author, at section 247, in discussing the subject, of repeals by implication, says:

"Such repeals are recognized as intended by the Legislature, and its intention to repeal is ascertained as the legislative intent is ascertained in other respects, when not expressly declared, by construction. An implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act. In such case the later law prevails as the last expression of the legislative will; therefore the former law is constructively repealed, since it cannot be supposed that the lawmaking power intends to enact or continue in force laws which are contradictions. The repugnancy being ascertained, the later act or provision in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it."

Applying the rule stated to chapter 75, Laws of 1913, in so far as the same applied to cities and towns of less than

1,000 population, I will proceed to consider the effect of the enactment of chapter 45, Laws of 1917, and determine whether the latter act, operated to repeal, by implication, chapter 75, Laws of 1913, in so far as the same applied to municipalities of less than 1,000 population. Relator contends that the two acts can stand and, both be given effect; that it would be competent to include a municipality of less than 1,000 population in a district under the law of 1917, or for people within the limits of such town to vote upon the question; that it was the intention of the Legislature to provide two methods either of which might be adopted. I cannot agree with this contention for to so hold would nullify or render inoperative one of the two acts. Under chapter 75, Laws of 1913, the petition must be presented to the town council, which orders the election, appoints the election officers, canvasses the returns, and declares the result. Under the amendatory act of 1917, if such town be included within a district, the petition must be presented to the board of county commissioners, which orders the election, appoints the election officials, canvasses the returns, and declares the result. If both laws are to be given effect, it would be possible for the people of such a town to frustrate and defeat the inclusion of such town in a larger district; for under chapter 78, Laws of 1913, as amended, it is made the duty of the board of county commissioners to call an election, which must be held not less than one month or more than two months after the entry of the order, and it would always be possible for petitioners in such a town to file a petition with the town council and hold an election prior to the county election, and thus defeat district prohibition, for, should the town vote upon the matter prior to the district election, its determination would be final, and not subject to revision for four years. Again, both elections might be called for the same day, and if chapter 75 is operative as to such town, if the vote in the town should result in favor of licensing the traffic, the district vote would be nullified in so far as the town is concerned. Again, should the town vote prior to the district election, then the inclusion of such town in the district petition would probably have the effect of nullifying

the district election, in so far as the remaining territory included in such petition was concerned.

I am satisfied from the language of the two acts that it was the intention of the Legislature of 1913 to provide one method for determining the question in cities and incorporated towns, and a separate and distinct procedure for the determination of such question in territory not embracing an incorporated city or town. In 1917 the Legislature was evidently of the opinion that it would be advisable to take out from under the operation of chapter 75 municipalities of less than 1,000 population, and to put such places under the operation of the district local option law. If the amendatory act of 1917 be construed to take out from under the operation of the municipal local option law towns of less than 1,000 population, there will be no possibility of confusion, even though the inhabitants of such a town might determine to create a district composed only of the territory embraced within the limits of such town; for, should they so determine, the petition would be presented to the board of county commissioners, which alone would have the power to order the election and declare the result. So construing the two acts, the possibility of conflict is obviated; for, should two petitions be presented simultaneously, the board of county commissioners is authorized, where two or more petitions are filed wherein the area described is conflicting, to determine the district or districts in which such question shall be submitted. The later act having impliedly repealed the provisions of chapter 75, in so far as municipalities of less than 1,000 population are concerned, necessarily section 5, chapter 75, which prohibits the resubmission of such question within four years from the date of the prior election was repealed, and it was competent for the petitioners to include Texico in the district petition, notwithstanding it had theretofore and within four years preceding voted upon the question.

For the foregoing reasons, in my judgment, Texico was properly included in the petition.

A more serious question is presented by the second contention, that by the inclusion of the district of Melrose in the petition the same was invalidated, and the board of

county commissioners was without power or authority to order the election in question. In the determination of this question chapter 75 is not concerned, for, as stated, Melrose was not an incorporated town or city, and the election held less than four years preceding the election of 1917 was held and conducted in accordance with chapter 78. section 9 of which provides:

> Such question, affecting any territory included in any such petition, shall not again be submitted for four years from the date of the election.

If the district of Melrose was improperly included included in the last petition, then the board of county commissioners had no authority to order the election. In Joyce on Intoxicating Liquors, § 381, it is said:

> "A petition, to give jurisdiction, must contain all the averments required by statute, and where the petition for an election is not in compliance with the statute, all proceedings based thereon are void, and no jurisdiction to order an election is acquired, and an election in such a case is a nullity."

The amendment to chapter 78 by the Legislature of 1917 did not operate to repeal any of the provisions of said chapter as originally enacted, save only that portion of the act which prohibited the inclusion within such petition of any incorporated town or village. Section 9 of the act was continued in full force and effect, and the amendment had no effect whatever upon the prior election held in the Melrose district. That the territory embraced in the Melrose district was not properly included in the petition cannot be doubted; but respondent argues that because a majority of the voters, excluding the vote cast in Melrose, was overwhelmingly in favor of prohibition, no harm to relator resulted in the inclusion of this district in the petition and order for the election. But this is aside from the question, as we are required to determine whether or not the law making it a penal offense to engage in the sale of intoxicating liquors under the circumstances named in chapter 78 was properly put into force and effect in the district named in the petition under which the election

was held in 1917. Under local option statutes, where the voters determine whether or not a given statute shall have force and effect in a designated community, such a statute is only given, life and vitality by reason of the compliance with the statutory provisions by which it is called into life and effect in such community. In the present case, if the statute was not invoked in accordance with the terms of the act authorizing such determination on the part of the people, then it would not be operative in the territory embraced in the petition, and Deats would be unlawfully deprived of his liberty.

The petitioners in this case petitioned for a local option district which included the Melrose district. They did not ask for an opportunity to vote upon the question in a district which excluded Melrose. Every petitioner who signed the petition must necessarily be presumed to have been desirous of submitting the question in the entire district, including Melrose. The statute is mandatory to the effect that no "territory included in any such petition" which has voted upon the proposition shall be included in any other district for the period of four years. To hold that Melrose was properly included, or that its inclusion did not invalidate the election, would be to destroy the prohibition contained in that section. In the case of Akin v. State, 14 Tex. App. 142, in discussing the sufficiency of a petition for a local option election, the court quotes with approval from Prather v. State, 12 Tex. App. 401, as follows:

"It is the petition that confers upon the commissioners' court the jurisdiction to order the election. Without such petition, that court would have no power to act in the matter, and an order made by it for such an election, without such petition, or upon an insufficient petition, would be a nullity, and the election held in pursuance thereof would be a nullity."

It is argued that because the board of county commissioners is without power to fix the boundaries, or change the boundaries described in the petition, when a petition is presented to it, describing certain boundaries of a proposed district, it must order the election, whether such boundaries

describe a permissible district or otherwise. In other words, the argument carried to its logical conclusion means that although an election had been held within a given district, and the statute prohibits the holding of another election therein for four years, yet if a petition be presented describing the same district and petition for another election, the board would be without the power to withhold calling and holding the election, because it would have no discretion in the matter.

I concede that when a petition is presented to the board, asking for an election in a permissible district, which properly describes the boundaries of the same, and it is signed by the requisite number of voters, the board has no discretion or option in the matter. Its duty to call and hold the election is mandatory. But certainly it is within the power, and must be the duty, of the board to determine whether the petition is signed by the number of petitioners required by the statute. This is a fact which it must ascertain before it can act, and this fact it ascertains, as does any other ministerial board or officer, before it acts, where it is authorized to act only where certain facts exist. A sheriff, in releasing a prisoner on bond, is required to take a good and sufficient bond. By inquiry and of his own knowledge he ascertains whether the proposed sureties are able to respond to the penalty in the bond. In determining whether the petition is signed by the requisite percentage of the voters, the board of county commissioners does not act in a judicial, but a ministerial, capacity. A ministerial act is an act which an officer performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to the exercise of his own judgment upon the propriety of the act being done. Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915C, 200; Rains v. Simpson, 50 Tex. 495, 32 Am. Rep. 609. And, as said by the Indiana Supreme Court in Flournoy v. City of Jeffersonville, 17 Ind. 169, 79 Am. Dec. 468:

"The act is none the less ministerial because the person performing it may have to satisfy himself that the state of

facts exists under which it is his right and duty to perform the act."

Under the local option statute in question, I do not see how it can be open to question that, before the board of county commissioners orders the election it must ascertain and satify itself that the petition is signed by the requisite number of voters, and I think it is equally true that it must ascertain and determine that the petition is for a permissible district. Suppose, for example, that a petition should be presented to a board of county commissioners, under the district local option statute, for an election in a designated district which included an incorporated city of more than 1,000 population. Would it be the duty of the board to order an election in such district as petitioned for? Most assuredly not, and yet, if the argument of respondent be sound that the board has no discretion to refuse to submit the question, and no power to determine whether the petition calls for a permissible district, then the board would be compelled to submit to the voters within in a requested district the question, notwithstanding the fact that the petition had not been signed by the legal number of petitioners, or that it called for a district not authorized by law.

The present case differs from the question of jurisdiction of courts. Courts having jurisdiction of the subject-matter and of the parties may enter a judgment, which is valid and binding against collateral attack. Here it is a question of power and authority. The board has the power, and it is made its duty, to order the election when the petition is presented, describing the district, and signed by the requisite number of petitioners. True, the statute does not say, in so many words, that the election shall not be ordered unless the boundaries of the proposed district include only permissible territory; but I do not think it can be logically contended, because of this omission or failure of the statute in this regard, that the board has not the power, and such duty is not imposed upon it. The statute defines what territory can be included, or, stated differently, it says what territory cannot be included, viz., incor-

porated cities or towns of more than 1,000 population and territory in which an election has been held under the provisions of the act within four years. Where a petition is presented which includes prohibited territory, an election should not be ordered, because, under the statute, such territory cannot be included, and, the petition being in violation of the statute, no right, power, or authority is conferred upon the board to order an election.

The Legislature carefully refrained from giving the boards of county commissioners any power to change the boundaries of the proposed district. This, I take it, was done, so that it would not be within the power of the board to thwart the will of the people. Even in case of conflict between two proposed districts, the board has not the power to change the boundaries of either. It can only determine within which of the proposed districts the question will be submitted. In the face of the lack of power, upon the part of any person, board, official, or court, conferred by the statute, the majority of the court in this case holds that the court has the power and will change the boundaries of the district petitioned for and voted upon. It is true, they do not say so in so many words; but the effect of their holding is the same. They say that the court will eliminate the Melrose district, a territory embracing four square miles, from the petition, upon the assumption, I presume, that it is taken for granted that the people living in the district as changed and amended by the decree of the court would have petitioned for and voted favorably upon the adoption of the statute therein. That they might have done so I grant; but, as I view the matter, it is establishing a dangerous precedent for the court to say that it will set itself up as the arbiter of the wishes of the petitioners and electors in such a matter, without hearing proof or resorting to any legal method for the ascertaining of truth.

Because the territory embraced within the Melrose district was small cannot alter the principle involved. If the court can eliminate Melrose and contiguous territory from the petition and order for election and the result of the election, it could with equal propriety eliminate the larger territory. Suppose the facts were just the reverse; that

within four years all of Curry county, except Melrose district, had voted upon the question, and that the present election was held upon a petition which embraced the whole county; would the court eliminate the larger territory from the Melrose district and uphold the election within the four square miles of territory, within which only the election could have been legally held? If it can eliminate Melrose now, it could do so.

Again, if the court can legally eliminate the Melrose district from the petition and effect of the election, it would have been competent for the board of county commissioners to have amended the petition by eliminating that territory, and to have submitted the question to the voters within the amended district; for certainly the court cannot now do that which would have been illegal for the board to have done in advance. Can it be contended that the board has any such power, in the face of the statute, which clearly gives it no such power, and impliedly, to say the least, withholds from it such power? In my judgment, the statute is the yardstick by which we are to measure the question as to whether the law is in force in the named district. If its terms and provisions have been compiled with, then certainly the law is applicable to the district. If, on the other hand, it has not been put into force and effect, as directed and authorized by the statute, then it is clearly the duty of the court to so declare.

The power assumed by the court in this case, in so far as this one case is concerned, is of minor consequence, because saloons are rightly regarded as a unmitigated evil, and the elimination of the Texico saloons would unquestionably be a blessing to that community. The disregard by the court, however, as I view it, of the plain provisions of the statute, and the doctrine announced, is of the most vital importance; for the court is substituting judicial judgment for the will of the people, or, in other words, we say that we will determine what the petitioners intended, and what the electors desire, regardless of the petition filed by them. In other words, because they petitioned and voted for a district which included prohibited territory, yet the court will assume that all the petitioners would have

State ex rel. Garcia v. Brd. Com'rs., 22 N. M. 562.

petitioned for and voted in the same manner upon a smaller district; that we will cut down the boundaries of the proposed district, and declare that the requisite number of petitioners petitioned for the same, and likewise a majority of the voters voted for prohibition therein, and hence we will enforce the penal provisions of the statute in the new district, created, not by the petition and vote of the people, but by judicial fiat.

I am of the opinion that by the inclusion of the Melrose district in the petition for the election in question, contrary to the positive terms of the statute, the petition was a nullity, and the board of county commissioners had no authority to order the election in question. This being true, the election held thereunder was a nullity, and the provisions of chapter 78, prohibiting the sale of liquor in districts voting in favor of prohibition, had no application to Texico, or any part of Curry county embraced within the petition here involved.

For this reason, it is my opinion that Deats is unlawfully deprived of his liberty, and the writ should be granted, and he should be discharged from custody.