[No. 1615, February 14, 1914.]

IN THE MATTER OF THE APPLICATION OF B.. S. EVERMAN FOR A WRIT OF HABEAS CORPUS..

SYLLABUS (BY THE COURT)

1. The district local option law, chap. 78, S. L. 1913, is a complete enactment in itself and requires nothing further to give it validity; it depends upon the popular vote for a determination only of the territorial limits of its operation, and is a valid and constitutional exercise of the legislative power.

P. 607

2. A license to retail intoxicating liquor is neither a property right nor a contract. It is in no sense a contract made by the State with a party holding the license; it is a mere permit subject to be modified or annulled at the pleasure of the legislature.

P. 610·

3. The creation or designation of the district, as required by sections 1 and 2, chap. 78, C. L. 1913, is an administrative· act and not legislative.

P. 612·

Original Application for Writ of Habeas Corpus

J. H. Crist, Santa Fe; H. D. Terrill, Clovis, N. M., for petitioner.

Ira L. Grimshaw, Assistant Attorney General, Santa Fe, N. M., for State.

## OPINION OF THE COURT.

ROBERTS, C. J.—The petitioner was the holder of a license issued by the board of county commissioners of Roosevelt County, authorizing him to sell intoxicating liquors at Taiban, an unincorporated village in said County. After the issuance of said license, and while the same was in full force and effect, and unexpired, the qualified voters of Taiban and contiguous territory petitioned the board of county commissioners of said County, in accordance with the provisions of chap. 78, S. L. 1913, commonly called the "district prohibition law," to submit to the qualified voters within the named district the question "of whether or not the barter, sale or exchange of intoxicating liquors shall be prohibited therein as provided by this act." (Sec. 1, chap. 78, supra.) Upon the filing of said petition, the district was designated by the board of county commissioners, in accordance with sec. 2, of the Act, and the election was called and held pursuant to said Act. At said election a majority of the votes cast were in favor of prohibiting the sale, barter or exchange of intoxicating liquors within said district. Sec. 14, of the Act, provides for the refund, to the holder of a license authorizing the sale of intoxicating liquors, the unused portion of the license, at the time prohibition goes into effect. Petitioner did not apply for such refund, but continued to sell intoxicating liquors at Taiban, notwithstanding the result of the election and the provisions of said act making it unlawful to do so. Upon complaint filed against him, he was arrested and detained by the sheriff of said County, under a warrant issued upon such complaint, and he brings this action to obtain his release. His right to be discharged by the writ of habeas corpus is predicated upon

the assumption that said chapter 78, S. L. 1913, is unconstitutional.

The act in question does not differ materially from similar laws, found in many of the other States of the Union, except in one particular, viz:—the act in question provides for the creation and designation of the district wherein the question is to be submitted to the voters, by the board of county commissioners, upon petition signed by 25% of the qualified electors residing within such proposed district; the submission of the question to the voters of such district so created, and, upon a majority of the votes cast at such election being in favor of prohibition, prohibit the sale, barter or exchange of intoxicating liquors within such district for four years absolutely, and thereafter, until and unless upon petition the question is again submitted to the voters of such district and the majority shall vote in favor of licensing the sale of intoxicating liquors, whereas: all similar laws which we have been able to find in other States, provide for the submission of the question to the voters of some district, or subdivision of the County theretofore created by the board of county commissioners, or by law, for some other object or governmental purpose.

The constitutionality of "local option" legislation is no longer an open question in American jurisprudence, and such laws are almost universally upheld. While some of the early cases, it is true, held such laws unconstitutional and void, because based on a contingency, and, in effect delegated legislative powers to the people, (Parker v. Commonwealth, 6 Penn. St. 507; Rice v Foster, 4 Harr. (Dela.) 497), there is today practically no State holding to the contrary with the possible exception of Tennesee. See Wright v. Cunningham, 115 Tenn. 445.) Pennsylvania, Iowa, Indiana and California have all departed from the contrary doctrine, first announced by the courts of those States, as the cases hereafter cited will show.

Woolen & Thornton on Intoxicating Liquors, vol. 1, page 231, section 155, contains a full discussion on the history of local option laws and citing authorities says that by the "great weight of judicial decision now," such

laws do not violate the constitutional provision that the power to make laws is vested in the legislature, but that such laws are constitutional and valid.

"The constitutional objection to such a law is met, if the act, when it came from the legislature, received the Governor's approval, was properly published and was, of itself, a complete and perfect enactment. In such case the popular will is expressed under and by virtue of a law that is in force and effect and the people neither make nor repeal it. By this vote, petition or remonstrance, as the case may be, they only determined whether a certain thing shall be done under the law and not whether the law shall take effect. * * * As a result a different regulation, of a police nature, may under such a law exist in one town, city or county from that which exists in another. In such case, the maxim delagata potestas non potest delegari has no application." See section 156 to the same effect, et seq. In Commonwealth v. Weller, 14 Bush (Ky.), 218, the act prohibited the sale of liquor in a certain County. The Act was conditioned upon a ratification by a majority of the voters of that County. The constitutionality thereof was attacked upon the same grounds as in the case at bar. The Court held that "the popular will expressed for or against the provisions of the law does not, in any manner, destroy or affect the legislative intent," and that as the law was "perfect in all its parts and could be enforced without any other legislation" the objections urged were not well taken, and the Court, on page 224, said:

"We see no reason why, in a case like this involving a question of local interest and of mere police regulation, the popular will should not be consulted and on a question made the subject of this enactment, it is eminently just and proper.

In Schulher v. Bordeaux, 64 Miss. 59, a case wherein the local option law was attacked, the Court held that the question of the right to make an act of the legislature depend, for its operation, on a future contingency has been established by oft-repeated examples, and such action does not violate the constitution.

In Boyd v. Bryant, 35 Ark. 69, the prohibition law was again upheld.

In Caldwell, et al., v. Barrett, et al., 73 Ga. 604, the local option law was declared constitutional. The Court in that case said that the practice in that State, for more than half a century, had been to leave local questions, such as location of county sites, etc., to the vote of the people, to be effected thereby and that such laws had never been thought to be unconstitutional.

To the same effect, see Commonwealth v. Bennett, 108 Mass. 27.

In the case of State v. Pond, 93 Mo. 606, the local option law of that State was declared constitutional. The town of Trenton, by a majority vote, under the terms of the local option statute, held an election, which resulted in a majority of the votes being cast against the sale of intoxicating liquor. The relator thereafter applied for a license to keep a dram shop in that town. The application was refused and thereupon a mandamus was filed to compel the County Court to grant him such license. The Court on page 622 said:

"While this local option act provides that any County, or town, or city of the class named, may, by a majority vote, put such County, town, or city under the operation of the law, it does not refer to them the question of passing a law; that the legislature had already done, and only called upon them to decide by a vote whether they would accept the provisions of a law regularly enacted by both houses of the General Assembly and approved by the Governor, By its provisions the law and not the vote extended its influence over the locality voting against the sale of intoxicants. It was the law that authorized the vote to be taken, and when taken the law, and not the vote, declared the result that should follow the vote. The vote was the means provided to ascertain the will of the people, not as to the passage of the law, but whether intoxicating liquors should be sold in their midst. If the majority voted against the sale, the law, and not the vote, declared it should not be sold. The vote sprang from the law, and not the law from the vote. By their vote the electors declared no conse-

quences, prescribed no penalties, and exercised no legisla-
tive function. The law declared the consequences, and
whatever they may be they are exclusively the result of
the legislative will."

See also State of Iowa v. Forkner, 94 Ia. 1, which fully
discusses the constitutionality of this class of laws.
Groesch v. State, 42 Ind. 447; State v. Wilcox, 42 Conn.
365; State v. Kline, 50 Oregon (1907) 426; Sanford v.
County of Morris, 13 Am. Rep. 422; Paul v. Gloucester,
50 N. J. Law 585; Glovernell v. Howell, 70 N. Y. 287;
Ex Parte Handler, 176 Mo. 383; Ex Parte Lynn, 19 Tex.
A. 294; Cain v. Comm'rs., 86 N. C. 8; Bancroft v. Dumas,
21 Vt. 456, 114 Sta. Rep. 324, and authorities thereunder;
Ex Parte Beck, (Cal.) 124 Pac. 543.

And it is also well settled, were our statute not author-
ity on it, that a person has no interest in a license
**2** which cannot properly be revoked. It is neither a
property right nor a right of contract, but is a mere
license revocable under certain conditions.

In the case of State of Minn. v. Cooke, 24 Minn. 247,
the defendant attempted to justify the sale of liquor in a
prohibited district by giving in evidence a license author-
izing him to sell liquor for a period of twelve months
from its date. He claimed that he had never received any
notice of the revocation of his license. The question of
the delegation of the law-making power was also involved.
The Court held that the effect of the local option act was
to make the vote of a majority of the voters against li-
censes a prohibition and that the penalty for selling li-
quor within that prohibited district provided for an ef-
fectual revocation of outstanding licenses by the vote of
electors. It is plain, therefore, that in that case the li-
cense was revoked by reason of the action of the voters.

In Fell v. State, 42 Md. 71, the Court held "there can
be no question of the power of the legislature to fix the
time when a law shall go into effect; nor can it be doubted
that the legislature has power to prohibit the sale of spir-
ituous or fermented liquors in any part of the State; not-
withstanding a party to be affected by the law may have
procured a license under the general license laws of the

State which has not yet expired.   Such a license is in no sense a contract made by the State with a party holding the license; it is a mere permit subject to be modified or annulled at the pleasure of the legislature, who have the power to change or repeal the law under which the license was granted."

Also see Freund on Police Power, sec. 564, page 591.

Section 8 of chapter 78 of the laws of 1913, makes it unlawful to engage in the liquor business in prohibited districts.   Section 14 of the same act provides for a refund of the amount of the unused license, where the licensee was doing business before the district became a prohibited district.   These two sections, without doubt, revoked the license of the petitioner in this case, and he can claim no benefits under it.   If this is not an express repeal, it surely and clearly was an intention on the part of the legislature to revoke licenses when these events have happened and in law is an implied repeal, which is as effective in the case at bar as though it were express.

Therefore, it seems that the main contention of petitioner is:   The legislature in empowering twenty-five per centum of the people of a proposed area or district to petition the board of county commissoners to call an election in that district to determine whether or not the local option law shall be adopted, delegates its legislative powers and functions to these twenty-five per centum of the people of the district.

The district is created by the statute upon the filing of the petition with the board of county commissioners in compliance therewith.   The board must then designate its boundaries upon the minutes.   If a majority of the votes cast be in favor of prohibition, intoxicating liquor may not lawfully be sold within the district, except in certain cases for enumerated purposes, not involved in this case, until the question is again resubmitted to the voters and a majority of the votes cast are favorable to the licensing and sale of intoxicating liquors, which question cannot be submitted for four years after the previous election.   On the other hand, if a majority of the votes cast are not in favor of prohibition, the sale of liquor within the district may

be licensed, in accordance with law. In either event the question may not be resubmitted for a period of four years The district remains in existence, as designated in the petition and upon the minutes of the board of county commissioners, whatever may be the result of the election, and, under the law, in the event a majority of the votes cast at the election are in favor of prohibition, the law which prohibits the sale of intoxicating liquors applies to the district; while, on the other hand, if the vote be not in favor of prohibition, the law which licenses the sale is in force. The act calls for no legislation on the part of the people of any district, and the vote of the electors thereof does not make the law. The electors thereof perform no legislative functions whatever. As said by the Supreme Court of California, in the case of Ex Parte Beck, supra:

"The act is wholly one of the State legislature, in force all over the State so far as the rights of the people of the respective localities mentioned to avail themselves thereof is concerned; the only thing left to the electors of each such locality to determine being whether they will avail themselves of the prohibitions contained therein. This we have seen, involves no delegation by the legislature or exercise by the electors of legislative power, or the exercise of any power of local government by the district specified."

There is no merit in petitioner's contention, that, because the law provides for the designation of the district by the board of county commissioners, upon petition of twenty-five per cent. of the qualified voters, resident within the proposed district, the legislature has delegated its legislative powers and functions to these twenty-five per centum of the people of the district.

The creation, or designation of the district is an administrative act and not legislative. It is created pursuant to the provisions and upon the conditions prescribed by the legislature. The law points out how it shall be formed, designated and created. In carrying out the provisions of the Act, the qualified electors and board of county commissioners are administering the law; they are not assuming to make law. Were this not true, boards.

of county commissioners, in creating precincts, election districts, etc., would be exercising legislative power.

The act in question can not properly be held violative of any provisions of our Constitution that has been called to our attention, and we see no reason to doubt its validity. This being so, we are compelled to uphold it as a valid enactment of the State legislature. This being so, it necessarily follows that the petitioner is not entitled to be discharged upon the showing made.

For the reasons stated, the writ is discharged and the petitioner remanded to custody.