308 P.2d 205

STATE of New Mexico, ex rel. Hilton A. DICKSON, Jr., Chief of Liquor Control Division, Appellant,

v.

Jake SAIZ, d/b/a Jake's Market, Riverside, New Mexico, Appellee.

STATE of New Mexico, ex rel. Hilton A. DICKSON, Jr., Chief of Liquor Control Division, Appellant,

v.

Alberto and Ernest GONZALES, d/b/a Ranchitos Riverside Bar, Taos, New Mexico, Appellees.

Nos. 6071, 6072.

Supreme Court of New Mexico.

Jan. 23, 1957.

Rehearing Denied March 4, 1957.

228

Louis C. Lujan, Santa Fe, for appellant.

Matias L. Chacon, P. R. Melendez, Espanola, E. P. Ripley, Santa Fe, for appellees.

Dean S. Zinn, Santa Fe, Irwin S. Moise, Lewis R. Sutin, Albuquerque, amici curiae.

M. W. Hamilton, Santa Fe, Sp. Atty. for The Bureau of Revenue.

PER CURIAM.

The question for decision is whether Art. IV, § 22, of the Constitution in giving the Governor power as to bills presented to him during the last three days of a legislative session, to veto "any part or parts, item or items, of any bill appropriating money" which he disapproves, limits him in any exercise of the power to action on general appropriation bills.

The question arises on an appeal by the State from a judgment rendered by the district court of Santa Fe County upon a statutory review before him of the action of the Chief of the Liquor Control Division in which the defendant, Saiz, suffered revocation of his retail liquor license for the sale of liquor on Sunday in violation of the provisions of L.1939, c. 236. Although finding all issues of fact in favor of the State; nevertheless, the trial court entered an order setting aside the revocation directed by the Chief of the Liquor Control Division upon the ground the action of the Governor in attempting to exercise a partial veto as to a portion of the Liquor Control Act prohibiting Sunday sales as charged. he had nullified the whole act.

In other words, the trial court questioned the validity of the act upon the ground challenged and held the same to be unconstitutional. A like ruling and order was entered in another proceeding for review pending before the Court, entitled State v. Gonzales, in which the defendant's license had been revoked on similar grounds. An appeal was taken in each case and

they have been consolidated here for purposes of consideration and decision, being appeal No. 6071, in which this opinion is being written and appeal No. 6072. It is agreed the action taken in appeal No. 6071 shall govern the disposition of appeal No. 6072.

Our decision on the question presented depends upon a proper construction of Article IV, § 22 of the State constitution as it existed prior to the amendment of said section in 1953. Indeed, we seriously doubt whether the amendment could have any bearing on the matter. The constitutional provision mentioned, as it existed at all times material to this case, reads:

"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor for approval. If he approve, he shall sign it, and deposit it with the secretary of state; otherwise, he shall return it to the house in which it originated, with his objections, which shall be entered at large upon the journal; and such bill shall not become a law unless thereafter approved by two-thirds of the members present and voting in each house by yea and nay vote entered upon its journal. Any bill not returned by the governor within three days, Sundays excepted, after being presented to him, shall become a law, whether signed by him or not, unless the legislature by adjournment prevent such return. Every bill presented to the governor during the last three days of the session shall be approved or disapproved by him within six days after the adjournment, and shall be by him immediately deposited with the secretary of state. Unless so approved and signed by him such bill shall not become a law. The governor may in like manner approve or disapprove any part or parts, item or items, of any bill appropriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided."

Counsel for the defendant (appellee) agree the only matters before us are questions of law which, before commencing their argument, they reduce to two in number, only the first of which calls for a decision, if an affirmative answer be properly supplied to it. The two questions as copied from the answer brief of defendants read:

"1. Was the Governor of the State of New Mexico empowered to invalidate the particular portions of Chapt. 236 of the Session Laws of 1939 that were vetoed by him?

"2. If the Governor did not have this power, did the attempted veto render the entire act void?"

So viewing the decisive questions presented, we proceed forthwith to a discus-

sion and decision of the first of the two questions mentioned. The decisive language of the questioned section of Article 4 of our Constitution is to be found in the last two sentences thereof. Chapter 236, Laws 1939, was enacted on March 15, 1939, the very last day of the regular session of the legislature for that year and presented to the Governor forthwith. The questioned act having been presented to the Governor at the late hour it was during the regular session, naturally stood exposed to the hazard of a pocket veto unless the Governor took affirmative action approving or disapproving within the limited period of six days following adjournment. If for any reason at all he took no action, the bill suffered the same fate that would have befallen it, had the Governor formally exercised the power of complete veto as provided by the Constitution.

Suppose, however, the Governor did not wish to exercise a complete veto; that he saw in the bill much of merit and salutary benefit to the state. Must he take it or leave it as it stood? Must he destroy the good to eliminate the bad in the bill? That the Chief Executive, who at that time was the Honorable John E. Miles, resolved the question confronting him in favor of the power to exercise a partial veto, is demonstrated by his veto message which, so far as material, reads:

" * * * Whereas, Article 4, Section 22 of the Constitution of the State of New Mexico provides in part as follows:

" 'The governor may in like manner approve or disapprove any part or parts, item or items, of any bill appropriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void, unless passed over his veto, as herein provided.'

"Whereas, it is my firm belief that House Bill No. 155 contains many salutary provisions for the welfare of the State of New Mexico, but also contains certain parts and items which I believe detrimental to the best interests of the State of New Mexico, more particularly those provisions which would permit the sale of intoxicating liquors on the Sabbath Day during hours of worship and during periods which the people of the State of New Mexico are recreation bound, during which hours the sale of liquor would be detrimental to the welfare of the people of the State of New Mexico, and firmly believing that it is my duty to give unto Caesar that which is Caesar's and unto God that which is God's;

"Now Therefore, by virtue of the authority vested in me as Governor of

the State of New Mexico, and pursuant to the provisions of Article 4, Section 22 of the Constitution of the State of New Mexico, I do hereby disapprove the following parts and items in House Bill No. 155, to-wit:

"All part of sub-section (a) of Section 1204, which reads as follows:

"'Provided, however, that the licenses of retailers shall allow them to sell and deliver alcoholic liquors, and the licenses of dispensers and clubs shall allow them to sell, serve, deliver and permit the consumption of alcoholic liquors on their licensed premises on Sundays between the hours of 2:00 P.M. and 11:00 P.M. in municipalities within or composing local option districts, and in counties composing local option districts, outside of the limits of the municipalities therein situated, if a majority of all votes cast at an election in any such municipality or county are in favor of the sale of alcoholic liquors on Sundays in each municipality or county.

"All of sub-section (b) of Section 1204.

"All of sub-section (c) of Section 1204.

"That part of sub-section (d) of Section 1204, which reads as follows:

"'or on any Sunday between 2:00 A.M. and 2:00 P.M. and between 11:00 P.M. and midnight;

"All that part of sub-section (e) of Section 1204, which reads as follows:

"'in any municipality or county which has not voted in favor of the sale of alcoholic liquor on Sundays therein, under the provisions of this Act,' and such parts so disapproved, I hereby declare to be by me void and the remainder of said House Bill No. 155 is hereby approved.

"Dated at Santa Fe, New Mexico This 17th Day of March, 1939.

"John E. Miles, Governor."

It is with the last three sentences of Art. IV, § 22 of the Constitution that we are primarily concerned. The first of these three sentences reads:

"Every bill presented to the governor during the last three days of the session shall be approved or disapproved by him within six days after the adjournment, and shall be by him immediately deposited with the secretary of state."

The second sentence of the last three, immediately following the one just quoted, reads:

"Unless so approved and signed by him such bill shall not become a law."

And then comes the final sentence, reading:

"The governor may in like manner approve or disapprove any part or parts, item or items, of any bill ap-

propriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided."

These last three sentences are set out separately the better to understand their meaning. The first sentence of the three provides that every bill presented to the Governor during the last three days of the session must be approved or disapproved by him within six days after adjournment, and shall be by him immediately deposited with the secretary of state. There follows, then, that unless so approved and signed by him such bill shall not become a law. The language is plain, clear and unequivocal.

■ Immediately following it, however, we find the language with which we are primarily concerned. It states the Governor may in like manner, that is to say as to any bills submitted to him within three days of legislative adjournment, approve or disapprove any part or parts, item or items, of any bill appropriating money, and such part or parts approved shall become a law and such as are disapproved shall be void unless passed over his veto, as therein provided. It is to be observed there is nothing in the language mentioned calling upon the Governor, once he has acted upon a measure so submitted, to return the same to the legislature if such action takes place prior to adjournment. He may do so, if he so desires and in such event it is only the part approved or disapproved which he is called upon to resubmit to the legislature. The parts of the bill approved become a law without further action upon the part of the legislature. State ex rel. Sandaker v. Olson, 65 N.D. 561, 260 N.W. 586.

Thus it is, it seems to us, there is nothing difficult about the meaning of the language employed except as we make it so by our attempt to interpret language that calls for no interpretation. Counsel for plaintiff (appellant) places much reliance on the distinction between general appropriation bills and other bills appropriating money. Opposing counsel challenge the distinction sought to be made and treat the general appropriation bills and "any bill appropriating money" as virtually synonymous. In other words, they treat them as meaning one and the same thing. It is when so treated that interpretation of this language in the Constitution becomes confusing and its meaning difficult to ascertain.

■ We are compelled to agree with counsel for the plaintiff that the language found in the proviso is not synonymous with the phrase "general appropriation bills." Indeed, the framers of the Constitution in extending the power of partial veto to "any bill appropriating money" were not themselves unmindful of the

proper use of the phrase "general appropriation bills" and could easily have employed it here, had such been their intention. See, Const., Art. IV, §§ 16, 19 and 23.

■ Chapter 236 of the Laws of 1939 was enacted in 1939. It represents an effort on the part of the legislature to regulate the liquor industry. It has stood in the statutes for almost twenty years and this is the first challenge to its validity that has reached this Court. In the meantime, however, it was assailed on constitutional grounds in the Fifth Judicial District before two separate district judges, each of whom sustained the validity of the act against the challenges made against it. One of such judges was the Honorable James B. McGhee, then a Judge of the Fifth Judicial District, and now a Justice of this Court, although he withdrew from participation in this decision. The other was before the Honorable C. Roy Anderson, a present Judge of the Fifth Judicial District. Their decisions, of course, are not binding upon us but they may be noticed as a part of the background of this decision.

■■ Furthermore, in the attack made upon the bill or statute in this Court we are confronted at the very outset with a presumption of the validity of the act. Indeed, it has been many times held in this Court that it should be well satisfied of the invalidity of an act upon constitutional grounds before striking it down; that if two constructions each equally reasonable should exist, the one sustaining the validity of the act is to be preferred. Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122. Some courts, even the highest court of the land, go so far as to suggest an appellate court should be satisfied beyond a reasonable doubt of an act's invalidity on constitutional grounds before declaring it so. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255; State v. Shroyer, 49 N.M. 196, 160 P.2d 444.

New Mexico was one of the latest states to adopt a state constitution being number 47 in the roll call of states. It had before it the experience and the history of the partial veto in the various states of the union at the time it adopted its constitution. It has, perhaps, one of the most liberal provisions touching a partial veto of any state in the union save the state of Washington which does not confine or restrict an exercise of the power to bills appropriating money. Cascade Telephone Co. v. State Tax Commission, 176 Wash. 616, 30 P.2d 976.

Further background is to be found in the course taken by the power of partial veto through the constitutional convention. We quote from the brief of Amici Curiae,

Irwin S. Moise and Lewis R. Sutin, as follows:

"Page 96 of the Proceedings of the Constitutional Convention shows that the Committee on the Executive Department proposed a provision like that in other States limiting partial veto to items of appropriations. Section 12 read as follows:

" 'Sec. 12. The Governor shall have power to disapprove of any *item or items* of any bill making appropriations of money *embracing distinct items,* and part or parts of the bill approved shall be law, *and the item or items disapproved shall be void unless enacted in a manner following:* If the General Assembly be in Session, he shall transmit to the house in which the bill originated, a copy of the item or items thereof disapproved, together with his objections thereto, and the items objected to shall be separately reconsidered, and each item shall then take the same course as is prescribed for the passage of bills over the governor's veto.'

"This is the exact language used in North Dakota and Wyoming as set forth in State v. Olsen [Olson] and State v. Forsyth, supra.

"This proposal was rejected. Instead, the proposal of the Committee on Legislative Department, p. 94 of the proceedings, was finally adopted in its present form.

"In so doing, the Constitutional Convention specifically rejected the interpretation which the trial court places upon Article IV, Section 22 of the Constitution. It specifically rejected a proposal which limited the partial veto power to items of appropriations. It specifically adopted a proposal which increased the partial veto power to parts of bills of general legislation which contained incidental items of appropriation."

It is, perhaps, because our state is one of the latest in the roll call of states to adopt its constitution and could profit from the language of other state constitutions on the same matter that our own provision on the subject finds no exact counterpart in the constitutions of other states. Nevertheless, and notwithstanding, as claimed by counsel for defendant, cases from other states may afford some distinguishable ground—more especially the one from Washington and that from Wisconsin, cited below, there is to be found in each of them reasoning applicable to the case before us, which lend support to the correctness of the conclusion we reach. Cascade Telephone Co. v. State Tax Commission, supra; State ex rel. Wisconsin Telephone Co. v. Henry, 218 Wis. 302, 260 N.W. 486, 99 A.L.R. 1267; State ex rel. Sandaker v. Olson, 65 N.D. 561, 260 N.W. 586; State

236

ex rel. Jamison v. Forsyth, 21 Wyo. 359, 133 P. 521.

■ We have given deep and careful consideration to the questions raised on this appeal and it is our considered judgment that the challenged act is not invalid or unconstitutional on any of the grounds raised against it, including the claim that the act is bad because the partial veto applies to part of a section or sub-section. Compare Cascade Telephone Co. v. State Tax Commission, supra. Both sides have been free to suggest apprehended dangers in our decision should it be against their respective contentions. We entertain no fear that the conclusion we announce is fraught with the dangers pointed out. Certainly, any legislature, if apprehensive of an abuse of the power of partial veto could easily forestall the danger by seeing to it that all bills reach the Governor on or prior to the 57th day of the session.

■ Our Constitution does not, necessarily, foreclose the exercise by one department of the state of powers of another but contemplates in unmistakable language that there are certain instances where the overlapping of power exists. Indeed, when the Governor exercises his right of partial veto he is exercising a quasi-legislative function. Spokane Grain & Fuel Co. v. Lyttaker, 59 Wash. 76, 109 P. 316.

■ It follows from all that has been said that the judgment of the trial court is erroneous and can not stand. It will be reversed and the cause remanded with a direction to the trial court to set aside its order revoking the action of the Chief of the Liquor Control Division of the Bureau of Revenue and enter another in lieu thereof affirming the cancellation of the license of the defendant.

It will be so ordered.

LUJAN, C. J., and McGHEE and KIKER, JJ., each, in turn, having recused himself, none participated in this decision.

SADLER and COMPTON, JJ., and McMANUS, D. J., concurring.

On Motion for Rehearing.

PER CURIAM.

The defendant (appellee) has moved for rehearing and we may as well at the outset give his counsel credit for having filed one of the best prepared and argued briefs it has been our pleasure to read and consider for some time. They have argued ably and well for the position they maintain. By and large, however, aside from a renewal and re-argument of contentions made at the original hearing, when boiled down, the brief filed is in essence a polemic against the very existence of the power of partial veto, its wisdom and rationale.

This is demonstrated by repeated reference to dire consequences that may flow

from the conclusions we have announced in the opinion filed. In other words, we are told that evils may result from an abuse by a Chief Executive of this power of partial veto. Some of these were put forward in briefs heretofore filed and some not then thought of are placed before us now.

The fact is, however, that the power of partial veto is written into our fundamental law. It is the work of the framers of our constitution. It is there, is a living reality, and as a court we can not rub it out. Our sole function is to ascertain its purpose and give it meaning, as nearly in conformity with the true intent of the framers of the constitution and the people adopting it, as we can. And in arriving at a declaration of that intent, we are not to be swayed from our conviction of what it is by imagined abuses that may be conjured up in the minds of some. The Governor has the power to pardon. Yet, it is no valid challenge to existence of the power to have it suggested he might empty the penitentiary overnight. He could, but no sane mind would.

Laws are enacted and constitutions drafted to be applied and administered by reasonable minds. It is neither a fair nor decisive test of their meaning that on occasions, powers conferred by them are, or conceivably could be, abused. We have reviewed our opinion on file in this case after careful study of the briefs filed by counsel for movant and in the light of considerations mentioned above. Nor have we been unmindful throughout that in exercising a partial veto the Governor acts in a quasi-legislative capacity.

What the Governor in the case at bar sought to do was to root out of the bill upon which he was acting so much thereof as would have made it possible to desecrate the Sabbath by having saloons and bars running wide open over the state throughout that holy day. Mindful that New Mexico was made up of law-abiding, God fearing people whose religious sensibilities would be shocked by such a situation, he went through the bill before him with meticulous care, lifting from it, wherever found, the part or parts germane to the subject about to be proscribed, and which together, made up a rounded whole, and took such part or parts from the bill. It mattered not where in the bill they rested if they constituted an integral part of the subject being partially vetoed—out they came!

It was while viewing the portions of the bill to be proscribed in this light, that our opinion employs language criticized both by counsel for defendant and the Attorney General, as Amicus Curiae, by reason of its supposed implications. The language is as follows:

"* * * the challenged act is not invalid on any of the grounds raised against it, *including the claim that the*

238

*act is bad because the partial veto applies to part of a section or subsection."* (Emphasis added).

In an application of the italicized language to the facts of this case we have nothing to retract. As already said, in order to accomplish his purpose to proscribe open saloons on the Sabbath, the Governor was compelled to strike language presupposing such permission wherever found. As we view the matter, he was acting strictly within his quasi-legislative capacity in exercising, as he did, his power of partial veto. We see in his action no usurpation of the legislative function. There was here present no reducing, nor any scaling, of appropriations, freely cited by all counsel in this case, including Amici Curiae, as a typical example of what might be called usurpation of a purely legislative function, citing among other authority, Fergus v. Russel, 270 Ill. 304, 110 N.E. 130, and annotation at 35 A.L.R. 600.

We entertain no doubt of the power of this Court, when and if a Chief Executive discards the robe of Governor and puts on that of a legislator, in exercising the power of partial veto, we shall be able to distinguish between the two and rule accordingly, whether the claimed transformation be in scaling an appropriation or otherwise. No such situation confronts us here, a fact denying us the authority to speak decisively on the subject at this time, and questioning as well the propriety of our doing so.

Seen through, we are disposed to agree with special counsel for the Bureau of Revenue, that defendant's position would question the power of the Governor to exercise the power of partial veto *at all* after adjournment of the legislature. We are unable and, hence, unwilling to subscribe to any such conclusion. Nor do we attach the significance, as do counsel for defendant, to the fact that the last paragraph of Art. 4, Const. § 22, fails to direct the Governor to deposit with the Secretary of State, immediately, or at any time, the portions of a bill he approves, after exercising his partial veto. It is not to be supposed, of course, that he would be found carrying the bill around in his hip pocket, or billfold. Naturally, he would duly deposit same with the Secretary of State, as in the case of any other bill upon which he had finally acted.

We have reconsidered the whole case, as if before us on rehearing, and remain satisfied with the opinion filed, as our conclusions are applied to the facts of the case before us.

The motion for rehearing will be denied. It is so ordered.

SADLER and COMPTON, JJ., and McMANUS, D. J., concurring.