670 P.2d 953

Anna Tasso CHRONIS, et al., Plaintiffs-Appellants and Cross-Appellees,

and

G.W. Carson, et al., Plaintiffs-in-Intervention-Appellants and Cross-Appellees,

v.

STATE of New Mexico, ex rel. Abe RODRIGUEZ, Director, Alcoholic Beverage Control Department, et al., Defendants-Appellees and Cross-Appellants,

and

Carl A. TOTI, et al., Intervenors-Defendants-Appellees,

v.

WALGREEN CO. and Walgreen Hastings Co., Intervenors-Appellees and Cross-Appellants.

No. 14130.

Supreme Court of New Mexico.

Oct. 13, 1983.

David L. Norvell, Albuquerque, for plaintiffs-appellants and cross-appellees.

Kegel & Montez, Sarah M. Singleton, Santa Fe, for plaintiffs-in-intervention-appellants and cross-appellees.

Paul Bardacke, Atty. Gen., Arthur J. Waskey and Denise D. Fort, Asst. Attys. Gen., Lawrence A. Barela, Albuquerque, for defendants-appellees and cross-appellants.

Paul F. Becht, Albuquerque, for intervenors-defendants-appellees.

Sutin, Thayer & Browne, Jonathan B. Sutin, Albuquerque, for intervenors-appellees and cross-appellants.

## OPINION

STOWERS, Justice.

This appeal arises from the trial court's finding that certain sections of the Liquor

**344**

Control Act, 1981 N.M.Laws, chapter 39 are unconstitutional. At trial, the plaintiffs alleged that Sections 36, 103, 110, 113, and 114 of the Act were unconstitutional and that the entire Act was therefore void because it was unseverable. The trial court's holdings on Sections 110 and 113 were not challenged on appeal.

On appeal, the issues presented to this Court are the severability of the Act and the constitutionality of Sections 36, 103, and 114.

Plaintiffs and plaintiffs-in-intervention in this action are owners-operators and owners-lessors of liquor licenses, and taxpayers who have paid and expect to pay gross receipts taxes to the State of New Mexico for the general operation of state government. Various people operating under canopy licenses were permitted to intervene as party defendants. Walgreen Co. and Walgreen Hastings Co. were allowed to intervene by order of this Court dated March 3, 1982. Plaintiffs and plaintiffs-in-intervention are the appellants and cross-appellees herein. The State is the appellee and cross-appellant. Walgreen Co. and Walgreen Hastings Co. are the appellees-in-intervention and cross-appellants in intervention.

On June 12, 1981, prior to the Liquor Control Act's effective date of July 1, 1981, the plaintiffs-appellants brought an action for a declaratory judgment challenging the constitutionality of the Act. They requested a preliminary injunction enjoining the defendants, the Director of the Alcoholic Beverage Control Department and the Secretary of the Taxation and Revenue Department, from enforcing the provisions of the Act until the issues raised had been judicially resolved. The trial court issued a temporary restraining order on June 23, 1981, and modified it on June 26, 1981. It then entered a preliminary injunction on July 17, 1981. After a hearing, the trial court issued findings of fact and conclusions of law, and a memorandum opinion and judgment. The trial court held that the Liquor Control Act was operative and constitutional except for Sections 103 and 114. It also held that the entire Act was not

affected by the plaintiffs' successful attack on Sections 103 and 114 despite the Governor's veto of a severability clause. The trial court concluded that the Act was severable because other precepts of statutory construction permitted the severance of the unconstitutional sections.

I. Severability of the Act

■ The trial court found that the Governor's veto of Section 129, the severability clause, was constitutionally permissible. It also found that Chapter 39 does not appropriate money. Although the trial court found the Governor's veto to be valid, it concluded that the Governor's action did not affect the severability of the law.

N.M. Const. art. IV, Section 22 (emphasis added), provides in pertinent part:

The governor may in like manner approve or disapprove any part or parts, item or items, *of any bill appropriating money,* and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided.

The trial court was correct in holding that the Governor's action did not affect the severability of the law. However, because the Act does not appropriate money, we hold that the Governor's veto power was invalidly exercised in violation of Article IV, Section 22. *See State ex rel. Sego v. Kirkpatrick,* 86 N.M. 359, 524 P.2d 975 (1974); *State ex rel. Dickson v. Saiz,* 62 N.M. 227, 308 P.2d 205 (1957); *see also* AG Op. No. 81–12 (1981). The language of the Constitution is clear. The Governor's power of partial veto is limited to bills appropriating money.

II. Section 36

■ The trial court held that Section 36 of the Act was constitutional because the plaintiffs had no vested property right in a liquor license as against the State. The plaintiffs allege, however, that the Liquor Control Act is unconstitutional because it takes existing licensees' property interests without due process. However, we can find no persuasive authority for us to differenti-

ate in this case between the terms "property right" as used in Section 36 and in prior New Mexico cases and the term "property interest" as used by the appellants.

Section 36 provides that:

> The holder of any license issued under the Liquor Control Act or any former act has no vested property right in the license which is the property of the state; provided that until June 30, 1991, licenses issued prior to the effective date of the Liquor Control Act shall be considered property subject to execution, attachment, a security transaction, liens, receivership and all other incidents of tangible personal property under the laws of this state, except as otherwise provided in the Liquor Control Act.

(codified at NMSA 1978, § 60–6A–19 (Repl. Pamp.1981)).

This Court has consistently held that as between a licensee and the State, a liquor license is a privilege and not a right. As early as 1914, this Court determined that a person has no interest in a license and that the license is neither a property right nor a right of contract, but a mere license, revocable under certain conditions. *In re Everman,* 18 N.M. 605, 139 P. 156 (1914). Subsequently, we reaffirmed that a liquor license is a mere permit which may be modified or annulled at the pleasure of the Legislature. *Floeck v. Bureau of Revenue,* 44 N.M. 194, 100 P.2d 225 (1940); *Ex parte Deats,* 22 N.M. 536, 166 P. 913 (1917). Moreover, in *Chiordi v. Jernigan,* 46 N.M. 396, 400, 129 P.2d 640, 642 (1942), this Court specifically held:

> The liquor control act is a police regulation * * * The state has prescribed the terms under which it will grant such license and likewise the terms under which it may be revoked. It may give and it may take away through its constituted authority * * * * Such license is a privilege and not property within the meaning of the due process and contract clauses of the constitutions of the State and the nation, and in them licenses have no vested property rights. (Citations omitted.)

In *Chiordi,* this Court upheld the authority to give communities the option to be dry and prohibit all licenses.

This Court has repeatedly held that a liquor license is a privilege subject to regulation and not a property right. For example, this Court has held that a citizen has no inherent power to sell intoxicating liquors, stating that "[a]s it is a business attended with danger to the community it may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils." *Yarbrough v. Montoya,* 54 N.M. 91, 95, 214 P.2d 769, 771 (1950). In *Valley Country Club v. Mender,* 64 N.M. 59, 323 P.2d 1099 (1958), we again noted that the owner of a liquor license had no vested rights in the license as against the State. *Id.* at 63, 323 P.2d at 1101. In *Nelson v. Naranjo,* 74 N.M. 502, 395 P.2d 228 (1964), this Court stated that "as between the State and the licensee, a liquor license is a mere revocable privilege vesting no property rights in the licensee * * * * " *Id.* at 507, 395 P.2d at 231.

Finally, we also note that under the provisions of the prior liquor law there was no vested property right in a liquor license as against the State. NMSA 1978, Section 60–7–18(F) was formerly compiled as NMSA 1953, Section 46–5–15(F), and provided as follows:

> The holder of a retailer's, dispenser's or club license has no vested property right in the license as against the state, but as against creditors of the licensee the license shall be considered property subject to execution, attachment, security transactions, liens, receivership and any and all other incidents of tangible personal property under the laws of this state, except as otherwise provided herein.

We continue to hold that liquor license holders have no property right in their license as against the State, and accordingly find that Section 36 is constitutional.

We also address whether the enactment of the Liquor Control Act effects a taking of property without due process as argued by the plaintiffs. In order to answer this, we must determine whether the Act consti-

tutes a reasonable exercise of police power by the State.

▮ Under N.M. Const. art. IV, Section 1, the Legislature is granted power to promulgate laws providing for the preservation of the public peace, health or safety. Section 2 of the new Liquor Control Act (codified at NMSA 1978, § 60–3A–2(A) (Repl.Pamp.1981)) specifically states that it is the policy of the Act that "the sale, service and public consumption of alcoholic beverages in the state shall be licensed, regulated and controlled so as to protect the public health, safety and morals of every community in the state * * * * " This Court has recognized that the State has broad police power to regulate the liquor business. The Legislature has the power not only to regulate the sale of alcoholic beverages, but to suppress it entirely. *Drink, Inc. v. Babcock,* 77 N.M. 277, 421 P.2d 798 (1966). Furthermore, the Legislature may impose on the liquor industry more stringent regulations than on other businesses. *Id.* at 280, 421 P.2d at 800; *see also Kearns v. Aragon,* 65 N.M. 119, 333 P.2d 607 (1958).

▮ As long as the regulation is reasonably related to a proper purpose and does not unreasonably deprive the property owner of all or substantially all of the beneficial use of his property, it does not constitute a taking of private property pursuant to the state's police power. *Stuckey's Stores, Inc. v. O'Cheskey,* 93 N.M. 312, 600 P.2d 258 (1979), *appeal dismissed,* 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980). Under the new Act, current liquor license holders have the continued right to engage in the alcoholic beverage business. *See* §§ 41 and 113(J). Moreover, license holders may also transfer the location of licenses (§§ 39(B) and 113(D)), devise licenses (§ 44(B) and (C)), use the license away from the licensed premises for special occasions (§ 29), and temporarily suspend the operation of the licenses (§ 43(C)). Therefore, we do not find that the new regulation unreasonably deprives the owner of all or substantially all of the beneficial use of his license, namely the ability to engage in the business of selling alcoholic beverages.

### III. Section 103

▮ The trial court held that Section 103 entitled "Summary Suspension" was unconstitutional. Section 103 states that:

[w]here the director has reasonable grounds to believe and finds that a licensee has been guilty of a deliberate and willful violation of the Liquor Control Act or any regulation or order of the department or that the public health, safety or welfare requires emergency action, the director may summarily suspend the license without notice or hearing for a period of three days. Immediately thereafter, the director shall comply with the provisions of Section 100 of the Liquor Control Act.

(codified at NMSA 1978, § 60–6C–7 (Repl. Pamp.1981)).

The appellants allege that the provision for summary temporary suspension of a license for three days without prior notice or hearing lacks procedural due process of law. They also contend that the clause which states that "public health, safety, and welfare requires emergency action" is vague and therefore denies substantive due process of law. The trial court found that Section 103 was a substantive violation of the due process clause because there is no proper standard set forth for the director to exercise his power. Moreover, because the director may exercise this power without notice or hearing, the trial court also found Section 103 to be a violation of procedural due process.

In *Drink, Inc. v. Babcock,* 77 N.M. at 280, 421 P.2d at 800, this Court stated that "when the manufacture and sale of liquor is lawful, as it is under our laws, statutes providing for the regulation of the business are limited by constitutional guaranties * * * " This was also noted by the California appellate court in *Irvine v. State Board of Equalization* when they stated:

[U]nder the American system of justice it is the policy of our law that a person should not be deprived even of a "permit"

to engage in a legitimate business without a fair and impartial hearing and without an opportunity to present competent evidence for consideration by the licensing authority in opposition to the proposed revocation of his permit. (Citations omitted.)

40 Cal.App.2d 280, 284–285, 104 P.2d 847, 850 (1940).

Under the summary suspension provision, the director is given power to summarily suspend a license and shut down a business without giving notice or requiring a hearing. We agree with the trial court that this provision violates procedural due process guarantees under the New Mexico Constitution and therefore hold that Section 103 is unconstitutional.

■ The State argues, however, that the plaintiffs lack standing to challenge this section of the Act. The State contends that in the current case, none of the plaintiffs alleged, testified, or put on other evidence that they are injured in fact by or actually threatened with enforcement or the exercise of Section 103.

The plaintiffs' attack upon the summary suspension provision was brought pursuant to the Declaratory Judgment Act, NMSA 1978, Sections 44–6–1 through 44–6–15. In order for a court to assume jurisdiction under the Declaratory Judgment Act, it must be presented with an "actual controversy." § 44–6–2. The prerequisites of an "actual controversy" are:

a controversy involving rights or other legal relations of the parties seeking declaratory relief; a claim of right or other legal interest asserted against one who has an interest in contesting the claim; interests of the parties must be real and adverse; and the issue involved must be ripe for judicial determination. (Citations omitted.)

*Sanchez v. City of Santa Fe,* 82 N.M. 322, 324, 481 P.2d 401, 403 (1971).

The purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights * * * and [the Act] is to be liberally construed and admin-

istered." § 44–6–14. To compel the licensees to await a summary suspension of their licenses before judicial review would frustrate the purpose of the Declaratory Judgment Act. Furthermore, it could cause irreparable injury to the reputations of these businesses and result in a loss of business and livelihood. We find that the legal interests of the parties are sufficiently adverse and that the issues are ripe for judicial determination. The trial court was correct in allowing these plaintiffs to seek a declaratory judgment.

We also find appellees' contention that the plaintiffs' complaint should have been dismissed because of failure to join indispensable parties to be without merit.

## IV. Section 114

■ The trial court found that Section 114 of the Act constitutes an unconstitutional legislative diminishment of an obligation owed to the State. Section 114 of the Act provides in pertinent part:

A. During the period of economic adjustment * * * every retailer or dispenser who owns a license initially issued prior to the effective date of the Liquor Control Act may claim a credit against his liability to the state for gross receipts tax * * * on retailer's or dispenser's receipts from the sale of alcoholic beverages in an amount not to exceed thirty thousand dollars ($30,000.00) for each twelve-month period ending June 30 * * if the license is leased in its entirety, the licensee may claim the credit specified herein in an amount equal to the gross receipts tax paid by the lessee upon receipts from the sale of alcoholic beverages * * * in an amount not to exceed thirty thousand dollars ($30,000.00) for each twelve-month period ending June 30. The licensee may claim the credit against any income tax, gross receipts tax, compensating tax or withholding tax due to the state from the licensee.

(codified at NMSA 1978, § 7–9–80.1 (Repl. Pamp.1983)).

The trial court found this provision to be a violation of N.M. Const. art. IV, Section 32, which states:

No obligation or liability of any person, association or corporation held or owned by or owing to the state, * * * shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court.

Although the trial court found Section 114 to be a constitutional violation of Article IV, Section 32, it also based its judgment on this Court's analysis of two cases which construed legislative enactments in light of N.M. Const. art. IX, Section 14. Article IX, Section 14 provides in pertinent part that:

Neither the state nor any county, school district, or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation * * *

In *State ex rel. Mechem v. Hannah,* 63 N.M. 110, 314 P.2d 714 (1957), this Court held unconstitutional a legislative enactment which granted to ranchers and farmers public funds to be used to purchase feed for livestock. The program was enacted to assist the livestock industry in overcoming severe drought conditions. In holding that the law enacting the program was unconstitutional, this Court noted that it attempted to give public money to private individuals. Furthermore, this Court stated that the fact that the program assisted the livestock industry, thus benefitting the economy of the state, was not sufficient to save the appropriation.

Moreover, the State was later allowed to recover those appropriated funds in *State ex rel. Callaway v. Axtell,* 74 N.M. 339, 393 P.2d 451 (1964). In *Axtell* this Court said:

We realize, as was said in Hannah, that, basically, the payments to the fund for the benefit of the ranchers and farmers

was for the general benefit of the state; but, unfortunately, it was and is unconstitutional as a donation of funds to private individuals who are neither indigents nor paupers.

*Id.* at 348, 393 P.2d at 457.

In the present case, the trial court noted that every dealer in alcoholic beverages owes the State of New Mexico a gross receipts tax that must be and should be paid. Furthermore, the trial court stated that the gross receipts tax on the sale of alcoholic beverages is an obligation that is owed to the State which cannot be excused by the Legislature.

We agree with the trial court that Section 114 is unconstitutional. However, we find that Section 114 is unconstitutional because the reduction in payments of gross receipts taxes in this case constitutes an unconstitutional subsidy to the liquor industry in violation of Article IX, Section 14.

Conclusion

For the foregoing reasons, we reverse the trial court's finding that the Governor's veto of the severability clause is constitutionally permissible and hold that the Act is severable and that the Governor's veto of the severability clause was invalid. We affirm the trial court and hold that Section 36 is constitutional but that Sections 103 and 114 of the Liquor Control Act are unconstitutional. Accordingly, the opinion of the trial court is affirmed in part and reversed in part.

IT IS SO ORDERED.

PAYNE, C.J., and RIORDAN, J., concur.

SOSA, Senior Justice, and FEDERICI, J., specially concurring and dissenting.

SOSA, Senior Justice, and FEDERICI, Justice, specially concurring and dissenting.

We concur in the results reached as to the severability of the Act and as to the unconstitutionality of Section 114. However we would have premised these results on an analysis substantially different from the majority opinion. We concur in both the rationale and result of the majority opinion

discussion as to Section 103. However as to this latter section, we would affirm on the additional ground that procedural due process should be accorded where there is a deprivation of a property interest.

We respectfully dissent as to the majority's conclusion that Section 36 is constitutional. We would hold this section uncon-. stitutional as a taking of property interests without due process of law.

*Section 36*

In our view, the liquor licenses in this case were in the nature of property interests which therefore merited some form of compensation under the Fifth and Fourteenth Amendments to the United States Constitution and Sections 18 and 20 of Article II of the New Mexico Constitution. A liquor license is clearly a property interest for some purposes. "Broadly defined, property includes every interest a person may have in a thing that can be the subject of ownership, including the right to enjoy, use, freely possess and transfer that interest." *Muckleroy v. Muckleroy,* 84 N.M. 14, 15, 498 P.2d 1357, 1358 (1972). New Mexico has consistently held that although a license is not property as between a licensee and the State, between a licensee and "creditors and for purposes of secured transactions, executions, liens, receiverships and other similar transactions, a liquor license is to be considered as tangible personal property." *State ex rel. Clinton Realty Co. v. Scarborough,* 78 N.M. 132, 135, 429 P.2d 330, 333 (1967); *Nelson v. Naranjo,* 74 N.M. 502, 395 P.2d 228 (1964); *see Valley Country Club Inc. v. Mender,* 64 N.M. 59, 323 P.2d 1099 (1958). In none of these cases was there an attempt by the Legislature to entirely deprive license holders of certain property interests in their licenses.

The Legislature recognized that the Act takes away certain interests which licensees have possessed until now. Section 36 states that licenses issued prior to the effective date of the Act retain certain property interests until 1991. Legislative acknowledgement of licensees' property interests is also found in Section 114 which attempts to pay licensees in tax credits for the depriva-

tion of these interests. It is clear that the Legislature felt some remuneration would be warranted for the taking of the property interests involved. It is highly unlikely the Act would have passed in its present form if the legislators felt that the proprietary interests taken did not merit some form of remuneration.

Although prior cases have held that a liquor license is a mere permit which may be modified or annulled at the pleasure of the legislature, *Floeck v. Bureau of Revenue,* 44 N.M. 194, 100 P.2d 225 (1940); *Ex parte Deats,* 22 N.M. 536, 166 P. 913 (1917); *In re Everman,* 18 N.M. 605, 139 P. 156 (1914), the distinction between a privilege and a right has been eroded in the area of governmentally generated property interests. Increasingly, due process rights have been afforded governmental licensees. Rights regulated under various types of licenses have been considered property rights. *Roberts v. State Board of Embalmers & Funeral Directors,* 78 N.M. 536, 434 P.2d 61 (1967); *see Muckleroy v. Muckleroy;* L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 10–9 (1978). The United States Supreme Court has stated "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'" *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971). The traditional "rights-privilege" distinction is no longer viable. *See O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 796, 100 S.Ct. 2467, 2481, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Even though the State could, through the exercise of its police power, significantly curtail or abolish the right to sell alcoholic beverages, where it does not do so but merely regulates, such regulation is subject to constitutional limitations. This Court has recognized that liquor control regulations must conform to constitutional strictures and that the State's regulatory pow-

ers are limited. "But when the manufacture and sale of liquor is lawful, as it is under our laws, statutes providing for the regulation of the business are limited by constitutional guaranties * * * *" *Drink, Inc. v. Babcock,* 77 N.M. 277, 280, 421 P.2d 798, 800 (1966).

Today it is clear that when regulation goes too far it must be treated as a taking and deemed invalid unless compensation is provided. L. TRIBE, § 9–2. This recognized principle has been historically followed, being enunciated by Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Adhering to this proposition the United States Court of Claims stated:

> When the effect of a governmental regulation on a citizen's property is so pervasive that the property is greatly depreciated in value or that the owner's right to use the property is substantially interfered with, the citizen is entitled to compensation * * * * "The general rule at least, is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

*Pete v. United States,* 531 F.2d 1018, 1034, 209 Ct.Cl. 270 (1976) (quoting *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415–16, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)). Justice Rehnquist clarified this concept by asserting

> [a] taking does not become a noncompensable exercise of police power simply because the government in its grace allows the owner to make some "reasonable" use of his property. "[I]t is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking."

*Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 149–50, 98 S.Ct. 2646, 2672–2673, 57 L.Ed.2d 631 (1978) (Rehnquist, J., dissenting), *reh'g denied,* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978) (quoting *United States v. Cress,* 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917)).

This Court has stated that "[t]he general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a 'taking' of that property if the regulation * * * does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of his property." *Temple Baptist Church v. City of Albuquerque,* 98 N.M. 138, 144–145, 646 P.2d 565, 571–72 (1982). We believe that the Act does deprive licensees of substantially all their beneficial use of certain property interests in the licenses. As of July 1, 1991, the licensees will be without capacity to convey, encumber or devise the liquor licenses they own. The fair market value of the licenses has dropped due to the inter-county transfer provision, Section 113, and due to expected losses of other rights later. Their value for use as collateral is diminishing. By 1991, this value will be diminished to zero. We believe that this is the taking of a property interest which must be declared compensable.

Comparable property interests are now in jeopardy under the reasoning of the majority opinion. The majority opinion, when carried to its conclusion, would subject personal, professional, and business licenses held by the citizens of this State to confiscation without remuneration. For these reasons, we would hold that Section 36 violates the constitutional guarantees of due process.

*Section 114*

While we agree with the majority holding that Section 114 is unconstitutional, we would hold it unconstitutional on the grounds that there is little demonstrated relation between the tax credit benefits and the fair market value of the individual licenses involved. Where there is a taking of property interests, as we believe there has been in this case, compensation should be coincident to the time of taking, and there

is a constitutional right to interest from the time of taking until payment is made. 3 J. SACKMAN, NICHOLS' THE LAW OF EMINENT DOMAIN § 8.63 (rev. 3d ed. 1981); *see State ex rel. State Highway Commission v. Peace Foundation, Inc.,* 79 N.M. 576, 446 P.2d 443 (1968). In addition, compensation must be fixed at the "actual value" of the property taken. *See* NMSA 1978 § 42A–1–24, (Repl.Pamp.1981). It is well settled that the amount of compensation to be paid an owner for a taking under the power of eminent domain cannot be decided by a legislative body. 3 NICHOLS', § 8.9.

Section 114, by providing a flat credit against gross receipts tax up to $30,000 per year for ten years, violates these concepts. In many cases, the credit bears no relation to the actual fair market value of the license.

The State's expert stated that ten years of maximum present-day value of the use of the tax credit is approximately $150,000. This amount has no relationship to the market values of the licenses. Under the formula which provides for gross receipts tax credit compensation, some licensees could receive a much greater amount than the actual value of their licenses, while other licensees could receive a much smaller amount than the actual value of their licenses. In no case will the owner be compensated at the appropriate time. No provision has been made for payment of interest on the compensation. The legislative attempt to compensate for the loss suffered by the licensees is inadequate to meet the requirements of just compensation. We would thus hold that Section 114 violates the constitutional guarantee of just compensation.

*Section 103*

While we do not disagree with the majority rationale or holding as to Section 103, we believe that the summary provisions of this section also violate due process since property interests are involved in this case.

Governmental procedures which result in depriving individuals of property interests within the meaning of the due process clauses of the Fifth or Fourteenth Amendments to the United States Constitution must provide the individual with procedural due process. Because we would hold that license holders are deprived by this Act of a property interest, we would also conclude that they are clearly entitled to procedural due process. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The United States Supreme Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. *Id.* In determining the type of process which is due prior to initial termination of benefits, pending review, the Court held that the following three factors should be weighed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

The private interest that will be affected by an official action under Section 103 would be the licensees' business reputation and livelihood. The risk of an erroneous deprivation of a property right may demean constitutional rights. The risk in the instant case is that the licensee will be unable to operate under a license for an unspecified time without an opportunity to be heard. While Section 103 requires the director of the department of alcoholic beverage control to comply with Section 100 of the Act immediately, Section 100 does not require the director to file charges against a licensee or request that the Governor appoint a hearing officer within a reasonable time. The Government's interest in the three-day summary suspension is small. The administrative burden of providing notice and an informal hearing would be minimal. We would thus find Section 103 unconstitutional on these additional grounds.

352

*Severability*

We agree that the Governor had no power to veto the severability provisions of the Act. We would point out in addition that in determining if an act is severable, New Mexico courts have established a three-pronged test:

First, the invalid portion must be able to be separated from the other portions without impairing their effect. Second, the legislative purpose expressed in the valid portion of the act must be able to be given effect without the invalid portion. And, thirdly, it cannot be said, on a consideration of the whole act, that the legislature would not have passed the valid part if it had known that the objectionable part was invalid.

*State v. Spearman,* 84 N.M. 366, 368, 503 P.2d 649, 651 (Ct.App.1972); *Bradbury & Stamm Construction Co. v. Bureau of Revenue,* 70 N.M. 226, 372 P.2d 808 (1962); *see Nall v. Baca,* 95 N.M. 783, 626 P.2d 1280 (1981). We would find that the force and effect of the remainder of the Liquor Control Act is not impaired by severance of any unconstitutional sections. The other sections of the Act can stand independently from the severed sections. For example, the elimination of Section 103 creates no textual anomalies in any of the remaining portions of the Liquor Control Act. Paragraphs (F) and (G) of Section 113 render certain licensees ineligible for the tax credit provided by Section 114. Elimination of Section 114 will not impair the effect of these paragraphs.

We do not believe that the Legislature would have passed any of the Act had it intended that the invalidity of any one section would render the entire Act invalid. The Legislature specifically included a severability clause in the Act. 1981 N.M. Laws, ch. 39, § 129. Section 129 stated that "[i]f any part or application of this act is held invalid, the remainder, or its application to other situations or persons, shall not be affected." We consider this an indication of legislative intent. *See State ex rel. Maloney v. Sierra,* 82 N.M. 125, 477 P.2d 301 (1970).

Where, as here, a [severability clause], has been incorporated expressly stating the legislative intent that the valid portion of the enactment should stand even though other parts may be determined to be invalid, there can be no question of legislative intent and if possible the portion of the legislation free from objection should be given effect.

*Clovis National Bank v. Callaway,* 69 N.M. 119, 129, 364 P.2d 748, 755 (1961).

The Legislature's intent that the Act be severable is also shown by the fact that the application of the other sections is not impaired by the elimination of Sections 36, 103 and 114. Statutes carry with them a presumption of validity and any court must be well satisfied as to their invalidity before striking them down. *State ex rel. Dickson v. Saiz,* 62 N.M. 227, 308 P.2d 205 (1957).

CONCLUSION

For the foregoing reasons, we would hold that Sections 36, 103 and 114 of the Liquor Control Act are unconstitutional but that the Act is severable and operative except for Sections 36, 103 and 114.